FILED

2010 Aug-04  PM 03:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

UNITED STATES STOVE
COMPANY,

     Plaintiff,

vs.                      CASE NO. CV-09-J-751-NE

STEADFAST INSURANCE
COMPANY,

     Defendant.

## MEMORANDUM OPINION

Pending before the court are plaintiff's motion for partial summary judgment, evidence, and memorandum of law (docs. 20 and 21); defendant's motion for summary judgment, evidentiary submissions and memorandum of law (docs. 22 and 23); defendant's response to plaintiff's motion (doc. 25); plaintiff's response to defendant's motion (doc. 26); defendant's reply in support of its motion (doc. 31); and plaintiff's reply in support of its respective motion (doc. 32).

Also pending before the court is the plaintiff's motion for sanctions (doc. 28) to which the defendant has filed a response in opposition (doc. 36).  Because this case is wholly resolved by the court's ruling on the cross-motions for summary judgment, the court finds the motion for sanctions to be **MOOT**.  Additionally, because oral

argument would not be of assistance to the court, the defendant's request for oral argument is **DENIED**.

Having considered the cross-motions of the parties, the evidence submitted, and the relevant law, the court finds as follows:

## I.  Factual Background

The plaintiff filed this action for declaratory judgment pursuant to Alabama law in the Circuit Court of Jackson County, Alabama.  The defendant removed the case to federal court, asserting this court has diversity jurisdiction under 28 U.S.C. § 1332.  Notice of Removal (doc. 1).  This case arises from a dispute concerning the interpretation of the term "occurrence" as that term is used in a commercial general liability insurance policy ("the policy") issued to plaintiff by defendant.

The parties do not dispute that the insurance policy covers claims against the plaintiff as a manufacturer of its products, subject to a $25,000.00 "per occurrence" deductible.  The plaintiff is the manufacturer of the Model No. 6300 Solid Fuel Warm Air Furnace (the "stove").   That model was first offered for sale by the plaintiff in June or July 2008.  Larry Nelson depo., at 46 (excerpts submitted as defendant exhibit 1 to doc. 23).

A problem with the Model 6300 stove allowed soot to be emitted into customers' homes, causing the plaintiff to receive approximately 128 claims

regarding property damage to its customers' homes.  Nelson depo. at 61 (defendant exhibit 1); Nelson depo. at  79 (excerpts submitted as plaintiff exhibit C to doc. 26). The model had a design defect which allowed fresh air and exhaust air to mingle, causing the soot emissions.  Nelson depo. at 77-81 (plaintiff exhibit C); Nelson depo. at 103 (defendant exhibit 1).  The first notice of the problem was in November or December 2008.  Peter Phillip depo. at 20-21 (excerpts submitted as defendant exhibit 2 to doc. 23).  The plaintiff performed testing on a unit to find out where the defect occurred.  Phillip depo. at 23 (defendant exhibit 2) and Phillip depo. at 24, 40-42, 60-64 (submitted as plaintiff exhibit B1-B2 to doc. 20).  The plaintiff then designed a "fix" to solve the soot problems, which was installed in each purchaser's stove. Nelson depo. at 82 (plaintiff exhibit C); Nelson depo. at 84 (defendant exhibit 1); Phillip depo. at 63, 68-69, 92-93 (plaintiff exhibit B2).

The claims were tendered to defendant for payment and the parties agree that defendant has paid each of these claims by plaintiff's customers.  The parties also agree that this case is governed by Tennessee law[1] and appropriate for resolution by cross-motions for summary judgment, as solely matters of law are in dispute.

---

[1]In its reply to defendant's response to plaintiff's motion for summary judgment, the plaintiff backtracks on its earlier assertion that Tennessee law applies.  Plaintiff reply (doc. 32), at 3.  However, the plaintiff then states that the court does not need to resolve this "possible issue" because the laws of Tennessee and Alabama "are identical."  *Id.*, at 4.

The plaintiff asserts that since each claim arose from one design defect, there is but one occurrence.[2]  *See e.g.*, Nelson depo. at 103 (defendant exhibit 1).  The defendant asserts each of these claims represents a separate occurrence under the policy in question, necessitating that the plaintiff pay a separate deductible for each of these claims.   According to the defendant, it has paid $2,062,403.02 for investigation, claims handling, and indemnity payments for 122 of the claims.[3]  *See* exhibit A to Nancy Dow affidavit (submitted as defendant exhibit 7 to doc. 23).  Under the defendant's interpretation of the policy terms, the plaintiff owes defendant additional deductible payments of $1,692,336.38 for claims arising from the sales of

---

[2]Defendant argues that because no one has examined every stove with this design defect, the cause of each sooting incident cannot be determined.  Defendant's response, at 11.  Defendant provides no citations in support of its novel argument that in a product liability claim, every single defective product sold must be examined before anyone can conclude that there is truly a design defect.

[3]In its brief in support of its motion for summary judgment, defendant asserts other dollar amounts it has paid and various dollar amounts it claims plaintiff owes for other claims under the policy.  *See* defendant's brief (doc. 23) at 9-10. However, the defendant has not sued in its counterclaim for any payments on models other than the 6300 stove.  *See* Answer and Counterclaim (doc. 3).  The court is therefore of the opinion that no claims for losses, payments or disputes arising from the sale of other products made by the plaintiff are before this court, and the court has no opinion as to whether the plaintiff owes the defendant deductibles for any such claims.

Similarly, defendant's argument that some damage could have been caused by faulty installation of the Model 6300 is misplaced.  As plaintiff points out, if damages were caused by faulty installation, defendant should have denied payment of any such claim, as plaintiff did not install any of the Model 6300 stoves at issue.  *See* plaintiff's response (doc. 26) at 16 n.2.  It simply is not a basis to claim plaintiff owes multiple deductible payments.

4

this particular stove.[4]   *Id*.   Defendant filed a counter-claim against the plaintiff

seeking a declaratory judgment that each defect is a separate occurrence.   Should the

plaintiff prevail, only one $25,000.00 deductible is due to the defendant.   The policy

states in relevant part as follows:

SECTION I -- COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE
LIABILITY

1.  Insuring Agreement

  a.  We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" and "property damage" to which this insurance applies....

SECTION V -- DEFINITIONS
....

14.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"

17.  a.  "Products - completed operations hazard" means all "bodily injury" and "property damage" occurring away from premises you own rent or occupy and arising out of "your product" or "your work,"...

  b. ....

  Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete will be treated as completed

21.  "Your product" means

  a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by

  (1) You,

---

[4]Citing this same affidavit, defendant asserts the plaintiff actually owes $1,723,240.39. This is not what is reflected in exhibit A, Dow affidavit.

(2) Others trading under your name, or

(3) A person or organization whose business or assets you have acquired....

"Your product" includes

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product", and

b.  The providing of or failure to provide warnings or instructions

Policy SCO 5346611 03, submitted as defendant exhibit 4.

The policy also includes a Deductible Endorsement that states the amount of deductible is "$25,000 Per Occurrence".  The deductible endorsement page includes the following language:

APPLICATION OF ENDORSEMENT.....

2.  The deductible amount stated in the Schedule applies as follows

A.  PER CLAIM BASIS - If the deductible is on a "per claim" basis, the deductible amount applies to all damages and "defense costs" because of bodily injury", "property damage", "personal injury" and "advertising injury" sustained by one person or organization as a result of any one "occurrence" or offense

B.  PER OCCURRENCE BASIS - If the deductible is on a "per occurrence" basis, the deductible amount applies to all damages and "defense costs" because of "bodily injury", "property damage", "personal injury" and "advertising injury" as the result of any one "occurrence" or offense regardless of the number of persons or organizations who sustain damages and "defense costs" because of that "occurrence" or offense.

*Id.* at Endorsement #5.

6

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th  Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element *essential to that party's case sufficient to sustain a jury verdict.* See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th  Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts

showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

## III.  LEGAL ANALYSIS

Because this case was submitted to the court on cross-motions for summary judgment, and the court finds that the underlying facts of this case are not in dispute, the court finds that this case may be wholly resolved by ruling on the pending motions.

The dispute before the court is one of contract interpretation, specifically the meaning of the term "occurrence" as intended by the parties to the contract. Under Tennessee law, "the interpretation of an insurance policy is a question of law and not fact." *Metro. Prop. and Cas. Ins. Co. v. Buckner*, 302 S.W.3d 288, 295 (Tenn.Ct.App.2009) (quoting *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 487 (Tenn.Ct.App.2006)).

As with all contracts, courts should construe insurance policies in a fair, reasonable, and logical manner, giving the policy language its usual and ordinary

8

meaning. *Tuturea v. Tennessee Farmers Mut. Ins. Co.*, 2010 WL 2593627, 7 (Tenn.Ct.App. 2010).   Whether a term in an insurance policy is ambiguous is a question of law.   *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 369 (6th Cir.2009) (citing *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 851 (6th Cir.2006)).   Ambiguity exists "if the language is susceptible to two or more reasonable interpretations."   *Park v. Unum Life Ins. Co. of America*, 2010 WL 1388161, 3 (E.D.Tenn.2010) (quoting *Royal Ins. Co. of America v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir.2008). See also *Moss v. Golden Rule Life Ins. Co.*, 724 S.W.2d 367, 368 (Tenn.Ct.App.1986)).   If a term in a contract is ambiguous, the court should construe the term in favor of the insured and against the insurance company.   *Univ. Hospitals of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 (6th Cir.2000); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 n. 7 (6th Cir.1998) (en banc); *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn.1991)).

The parties both argue that the insurance policy in question is ambiguous.   The court disagrees.   The language of Deductible Endorsement #5 very clearly resolves any ambiguity found in the term "occurrence" in the policy itself.   Under the endorsement, a distinction is clearly drawn between "claims" and "occurrences." The "per claim" deductible is specifically defined to include all damages sustained by one person or one organization as a result of an "occurrence."   To define "occurrence" to

include solely damages to one person or organization, as defendant argues, would defeat defendant's language in the endorsement defining a "claim" as something separate and apart from an "occurrence."  In contrast, the Deductible Endorsement clearly reflects that a "per occurrence" deductible covers all persons or organizations who sustained damages as a result of a particular event.[5]   The only means to distinguish this from a "per claim" deductible is to find that a "per occurrence" deductible may include damages from multiple claims, all arising from one occurrence.

The defendant argues that the court must look to the effect of an occurrence, rather than its cause, citing *Kuhn's of Brownsville v. Bituminous Cas. Co.*, 197 Tenn. 60, 65, 270 S.W.2d 358, 360 (Tenn.1954). *See* defendant memorandum (doc. 23), at 14.  That case involved two separate collapses of buildings adjoining an excavation site under a negligence theory, not a faultily manufactured product.  Each of the cases cited by the defendant in support of its multiple occurrences theory is

---

[5]As quoted *supra*, that language states:

If the deductible is on a "per occurrence" basis, the deductible amount applies to all damages and "defense costs" because of "bodily injury", "property damage", "personal injury" and "advertising injury" as the result of any one "occurrence" or offense *regardless of the number of persons or organizations who sustain damages and "defense costs" because of that "occurrence" or offense.*

(Emphasis added).

10

distinguishable.[6]  Here, the policy itself had two types of deductibles -- per claim and per occurrence.

"Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Gooch v. Life Investors Ins. Co. of America*, 264 F.R.D. 340, 357 (M.D. Tenn.2009) (quoting *Attorneys Ins. Mut. of Ala. v. Smith, Blocker, & Lowther, P.C.*, 703 So.2d 866, 870 (Ala.1996)).   Adopting the line of cases supporting the defendant's theory given the facts of this case would eliminate any distinction between a per claim and per occurrence deductible.   Surely this could not be the intention of the parties, as it renders Endorsement # 5 completely superfluous.  Had the defendant wanted to collect a deductible payment from the plaintiff for every claim made, it could have drafted its policy of insurance to so state, or simply not offered a policy with a "per occurrence" deductible option.

---

[6]In its reply, the defendant asserts the occurrence/claim dichotomy was meant to cover a situation more akin to if a stove exploded, injuring multiple people, then there would only be one occurrence, even though each injured person would have a claim.  Defendant reply, at 7. However, under defendant's argument of how the *Kuhn's* case applies, if the next door neighbors were also injured, *Kuhn's* would dictate a separate deductible would be due.  The court finds such an analogy to be strained.  Under the clear language of the policy, a more appropriate analogy would be that of a multi-vehicle accident all caused by one of the plaintiff's vehicles. Each injured person would have a claim for bodily injury and/or property damage, but as they all arose from one event, there would be only one occurrence and hence one deductible paid.

Parties to an insurance contract are free to bargain for and agree upon such terms as they see fit, unless their agreement is repugnant to public policy. *State Farm Fire and Cas. Co. v. White*, 993 S.W.2d 40, 43 (Tenn.Ct.App.1998) (citing *Setters v. Permanent Gen. Assurance Corp.*, 937 S.W.2d 950, 953 (Tenn.Ct.App.1996)). In the absence of fraud or mistake, courts should give effect to contracts as written. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn.Ct.App.1998) (citing *Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 708 (Tenn.Ct.App.1992)). If the language of a policy is unambiguous, a court must apply its terms, see *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn.1993), even if application of the controlling language will produce a harsh result, *PacTech*, 292 S.W.3d at 12 (citing *Wilson*, 856 S.W.2d at 708).

*Tuturea v. Tennessee Farmers Mut. Ins. Co.*, 2010 WL 2593627, 7 (Tenn.Ct.App. 2010).

"The courts are not at liberty to rewrite an insurance policy solely because they do not favor its terms and must avoid forced constructions that render a provision ineffective or extend a provision beyond its intended scope." *Merrimack*, 59 S.W.3d at 148 (citing Black, 909 S.W.2d at 3; *Demontbreun v. CNA Ins. Cos.*, 822 S.W.2d 619, 621 (Tenn.Ct.App.1991)) (internal citations omitted). Absent fraud, overreaching, or unconscionability, the courts must give effect to a provision in an insurance policy when its terms are clear and its intent certain. *Id*.

*Martin v. Doughtie*, 2010 WL 22815, 3 (Tenn.Ct.App.2010). *See also Spears v. Tennessee Farmers Mut. Ins. Co.*, 300 S.W.3d 671, 678-679 (Tenn.Ct.App.2009); *Blaylock and Brown Const., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn.App. 1990).

As the parties are aware, this is not the first court to confront the claim versus occurrence distinction.  In 2006 the Northern District of Ohio was faced with the same question when the manufacturer of a faulty gasket filed a declaratory judgment action against defendant Steadfast, asserting that the faulty gasket being used in televisions was one occurrence, in spite of multiple claims.  See *Parker Hannifin Corp. v. Steadfast Insurance Co.*, 445 F.Supp.2d 827 (N.D.Oh.2006).  The defendant argued that the gaskets manifested a number of different defects, and that each type of defect had a number of different potential causes.  *Id.*, at 831.  That court found defendant's arguments unpersuasive, noting that "[n]umerous courts have recognized that 'the calculation of the number of occurrences must focus on the underlying *circumstances* which resulted in the personal injury and claims for damage rather than each individual claimant's *injury*."  *Id.* at 832 (emphasis in original) (quoting *Owens-Illinois, Inc. v. Aetna Cas. & Sur. Co.*, 597 F.Supp. 1515, 1525 (D.D.C.1984)). *See also Michigan Chemical Corp. v. American Home Assur. Co.,* 728 F.2d 374, 379 (C.A.Mich.1984), citing *Champion International Corp. v. Continental Casualty Co.,* 546 F.2d 502, 505-06 (2nd Cir.1976), cert. denied, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977) ("the insurance policies under review afford coverage on an 'occurrence' rather than on a 'claim' basis. The use of the former term 'indicates that the polic[ies were] not intended to gauge coverage on the basis of individual

13

accidents giving rise to claims, but rather on the underlying circumstances which resulted in the claim[s] for damages.'").

In identifying the causes of property damage for the purpose of determining the number of occurrences, the causes of the property damage must be determined from the insured's point of view. *Associated Indem. Corp. v. Dow Chemical Co.,* 814 F.Supp. 613, 622-623 (E.D.Mich.1993). The insured before this court had but one design defect. All injuries arising from that defect are included within one "occurrence" under the unambiguous terms of the insurance policy. The relevant claims of damage arose from this one design defect. Defendant is aware of this, as its expert, Charles Coones, reported back to Paul Valle, with Zurich, that "based on what I know to date, this appears to be a generic issue with the missing grommet on the exhaust fan...."[7] Plaintiff exhibit 13 to Paul Valle depo. (submitted as plaintiff exhibit F to doc. 26).

## IV.  Conclusion

Having considered the arguments of the parties, the facts of this case and the relevant law, the court finds no genuine issues of material fact remain and that the plaintiff is entitled to judgment in its favor and against the defendant as a matter of

---

[7]Defendant Steadfast is a member of the Zurich North America group and therefore has many of its business functions performed by employees of Zurich, rather than defendant. *See* affidavit of Nancy Dow, submitted as exhibit 7 to doc. 23.

law on the sole count of its complaint.  The court therefore finds that the plaintiff's motion for summary judgment (doc. 20) is due to be granted and the defendant's motion for summary judgment (doc. 22) must be denied.  Under the insurance policy as written, the faulty design of the Model 6300 was but one occurrence, regardless of the number of claims made due to that design, and the plaintiff owes the defendant but one deductible payment.[8]  The court shall so Order.

**DONE** and **ORDERED** this the 4th  day of August, 2010.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[8]As stated *supra*, the court has no opinion and enters no ruling as to claims under the policy caused by defects from models of stoves or furnaces other than Model 6300 as those claims are not properly before this court.

15